FILED

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

DOCTOR'S ASOCIATES, INC.

            Plaintiff,

v.

Ivars Repins,

            Defendant.

Case No. 3:17-cv-00323

Date: 3/29/17

---

**Defendant's Answer/Response to Doctor's Associates, Inc. ("Subway")**
**Petition to Compel Arbitration**

---

      Defendant Ivars Repins ("Repins") files this answer/response to the plaintiff's (Subway) petition to compel arbitration, and in addition to the accompanying motion to dismiss, shows the court as follows:

**Answer to Petition**

1. I admit point number #1 of Subway's petition.

2. I admit point number #2 of Subway's petition.

3. I admit point number #3 of Subway's petition.

4. I deny point #4 that the court has diversity jurisdiction.

5. I deny point #5 of Subway's petition that venue is proper in Connecticut Federal District Court, all of my witnesses are here in Wisconsin (over 1000 miles away). Subway put me out of business by placing two competing Subway franchise stores within 1.5 blocks of my downtown Milwaukee store and made me near destitute. I am on the verge of filing for personal bankruptcy as a consequence of Subway's breach of their duties of good faith and fair dealings with me. Under the circumstances (i.e. where Subway put me out of business and leaves me near destitute), the arbitration agreement making venue of any arbitration in

Connecticut under the circumstances is unconscionable and should be held to be non-enforceable under the circumstances.

6. I admit portions of point #6 of Subway's petition that I signed an agreement with Subway in 2002 and possibly thereafter, but deny that arbitration provisions are enforceable.

7. I admit point #7 of Subway's petition that there is an arbitration provision in the franchise agreement, but it's my position that the arbitration provision is unconscionable and should be held unenforceable. Also, Subway may have waived the right to arbitration by filing an eviction action in Milwaukee and litigating its claims outside the arbitration agreement.

8. I deny point #8 in Subway's petition. Subway by its "affiliate" Subway Real Estate, LLC sued me in Milwaukee County Circuit Court, 15-CV-9447/15-SC-17459. Any provision in the franchise agreement which says I can't name Subway's affiliates in counter-claims or as witnesses to defend against Subway's claims against me should be held unconscionable and unenforceable.

9. I deny point #9 in Subway's petition. However, Subway by not providing an equivalent provision that I can recover attorney fees against Subway for its unconscionable conduct should be seen as grounds for this court to declare that Subway's adhesion contract and arbitration provision is so unfair and unconscionable that it should be held unenforceable or be so limited to avoid an injustice.

10. I admit point #10 of Subway's petition.

11. I deny those parts of point #11 of Subway's petition which are in conflict with the facts and amended pleadings filed on November 16, 2015. There is no present claim being made against Doctor's Associates, Inc. in the Milwaukee County Court litigation, only

Subway Real Estate, LLC which held the lease on my store location and which holds the leases on the nearby competing Subway store locations which put me out of business.

12. I generally admit point #12 of Subway's petition, but these allegations are more correctly made in the amended answer and counter-claims. See copy attached. But the finger for causing my injuries and damages is pointed at Subway Real Estate, LLC in the Milwaukee litigation, not Doctor's Associates, Inc. They sued me first so they should have nothing to complain about having to litigate in Milwaukee.

13. I deny point #13 of Subway's petition, but again state that Doctor's Associates, Inc. is not presently a party to the eviction case or counter-claims. Again, in the Milwaukee litigation the finger for causing my injuries and damages is pointed at Subway Real Estate, LLC, not Doctor's Associates, Inc. They (Subway Real Estate) sued me first so they should have nothing to complain about having to litigate in Milwaukee regarding the lease and their involvement in permitting competing Subway stores so close to me such that as a result I was put out of business.

14. I deny point #14 of Subway's petition, again in the Milwaukee litigation the finger for causing my injuries and damages is pointed at Subway Real Estate, LLC, not Doctor's Associates, Inc. They (Subway Real Estate) sued me first so they should have nothing to complain about having to litigate in Milwaukee regarding the lease and their involvement in permitting competing Subway stores so close to me such that as a result I was put out of business, is what caused my business to fail.

15. I deny point #15 of Subway's petition.

16. I admit point #16 of Subway's petition.

17. I admit to point #17 of Subway's petition, however, the statement of my Wisconsin
    attorney is moot.   I have not joined Doctor's Associates, Inc. in the Milwaukee litigation
    and presently have no intention to do so, unless they consent to it or if I get relief from this
    court holding the franchise agreement procedurally or substantively unconscionable.

18. I deny point #18 of Subway's petition.

19. I deny/object to point #19 of Subway's petition.  I made no representations to Subway to
    get them to dismiss their prior petition.  Subway voluntarily dismissed it after I filed the
    amended answer, affirmative defenses and counter-claim on November 14, 2015.  Subway
    misrepresents to the court their reasons for dismissing their prior petition.

20. I admit point #20 of Subway's petition.

21. I admit point #21 of Subway's petition that Doctor's Associates, Inc. dismissed their
    petition.

22. As to point #22 of Subway's petition, I don't know what the reasons they gave to the court
    for dismissal of the prior action, quite frankly, it came as a surprise to me and my
    Wisconsin attorney.

23. I admit that I filed my witness list and damage statement in the Wisconsin litigation on or
    about February 13th, 2017.

24. I admit that point #24 of Subway's petition that I'm seeking substantial damages against
    Subway Real Estate, LLC.  The rest of Subway's allegations are its conclusions which are
    a question of fact as to their truth or not.

25. As to point #25 of Subway's petition, I request that this court deny Subway's request to
    compel arbitration, to declare that the arbitration agreement is procedurally or
    substantively unconscionable, and/or that Subway's actions directed against me are a

breach of their duty of good faith and fair dealings, that Subway or its affiliates have waived any right to complain about litigating my dispute in Milwaukee County Circuit Court against Subway Real Estate, LLC and/or this new Subway lawsuit in Connecticut should be barred by the doctrine of laches.

26. Finally, in response to Subway's request for an injunction, this should be denied for the reasons stated in the preceding paragraph.

27. I request the plaintiff's petition be dismissed for lack of Federal Court diversity jurisdiction under 28 USC 1332 and because I don't presently have any pending dispute in litigation with the plaintiff requiring this court's involvement, or alternatively, that this court declare that Subway's actions directed against me and/or the franchise agreement are unconscionable, breach the agreement for lack of good faith and fair dealing, are waived or barred by the doctrine of laches, or alternatively, if held enforceable, that the venue for any arbitration should be in Milwaukee Wisconsin where I live, the store was located and where my witnesses are and where I can participate in because I basically have been bankrupted by the local Subway Real Estate LLC's actions against me.

Dated  this March 29, 2017.

Ivars R. Repins, pro se
1917 E. Kenmore
Shorewood, WI 53211
414-791-3926

### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

DOCTOR'S ASOCIATES, INC.                    :
                                         :
           Plaintiff,                    :
v.                                          :          Case No. 3:17-CV-00323
                                         :
Ivars Repins,                               :
           Defendant.                    :          Date: 3/29/17
                                         :

---

**Defendant's Memorandum in Support of Motion to Dismiss Plaintiff's Petition
for Lack of Subject Matter Jurisdiction / Alternatively for other relief**

---

Subway wants to force me to come to Connecticut to arbitrate any dispute I have with Subway Real Estate, LLC which sued me here in Milwaukee, WI. Subway claims that Subway Real Estate, LLC which filed the eviction action here in Wisconsin is not related to Subway Corporate ("Doctor's Associates, Inc." or "DAI"). This is all a shell game on Subway's part to put hurdles in front of little guys like me who signed their franchise agreement on a take or leave it basis. Here, I'm out of business because Subway put two stores within 1-2 blocks of me in downtown Milwaukee in the years leading to the failure of my store due to excessive rent charged by Subway Real Estate, LLC in light of the competing Subway stores they permitted so close to my store which was there first. I think the arbitration provision in the franchise agreement is unconscionable, particularly where Subway Real Estate, LLC caused my business to fail because they rented to so many competing franchises so close to mine. Because Subway Real Estate, LLC has essentially put me out of business and impoverished me and my family, I don't have the financial means to come to Connecticut and arbitrate any disputes I have with Subway Corporate. Be that as it is, Subway's petition should be dismissed for the following reasons:

I. **Subway Corporate (DAI) is not currently a Named Party in the pending Milwaukee Eviction Litigation.**

I don't know how Subway can force me to litigate/arbitrate any dispute I have with them' about putting me out of business in an arbitration proceeding in Connecticut when they are apparently claiming they are not party to any litigation here in Milwaukee. Again, I think Subway Corporate and Subway Real Estate, LLC are probably one and the same when it suits their favor, but when it doesn't they hold up the business entities as distinct. I think though that the bottom line is that Subway Corporate is not currently a party to any pending litigation here in Milwaukee which requires me to arbitrate anything with them.

II. **I haven't joined Subway Corporate in the Subway Real Estate, LLC's pending eviction action here in Milwaukee County Circuit Court.**

In any event, I am not currently pursuing any claims I have with DAI/Subway Corporate in court proceedings in the Milwaukee County eviction action. I put 16 years of my life being a loyal franchisee trying to build a business that would see me through my retirement all for nothing, because Subway Real Estate, LLC allowed too many competing franchises so close to me, yet did not lower my rent so I could remain competitive. I want to recover my losses, damages and injuries from Subway Real Estate, LLC, not Doctor's Associates, Inc. If they recognize they need to make me whole for what they've done to me and simply negotiate a settlement with me, that would be great, but that's probably not going to happen as this is the 2nd lawsuit they have filed against me in Connecticut which is over 1000 miles from Milwaukee where all the facts, witnesses and transactions occurred. It was explained to me that before someone can sue you in court their claim has to be "ripe". I don't think Subway's attempt to force me into arbitration is ripe.

### III.      The Controversy in Dispute in Milwaukee is Presently Less than $75,000.

I found the following on the internet regarding the issue of whether a federal court like this

one even has the authority under the law to consider Subway's petition.   The following discussion

I found regarding federal court diversity jurisdiction seems to apply here:

"It is well-established that the FAA [Federal Arbitration Act] does not itself confer federal

question jurisdiction. Therefore, a state court defendant must demonstrate that the federal court

has jurisdiction to hear its petition to compel arbitration. For diversity jurisdiction, this means

demonstrating that the amount in controversy exceeds $75,000 and that there is complete diversity

between the parties to the federal court action. Generally speaking, the amount in controversy is

determined by reference to the amount in controversy in the underlying litigation. *Woodmen of the*

*World/Omaha Woodmen Life Ins. Soc'y v. Scarbro*, 129 Fed. Appx. 194, 196 (6th Cir. 2005)

(unpublished) ("The true value of arbitration, the object of this [type of] litigation, cannot be

determined without reference to the potential cost of the state claim [to the federal court

plaintiff]."); see also *CMH Homes, Inc. v. Goodner*, 799 F.3d 832, 837-38 (8th Cir. 2013)

(extending the holding in *Vaden v. Discover Bank*, 556 U.S. 49 (2009), to hold that, as in cases

where subject matter jurisdiction to entertain a FAA petition is premised on the presence of a

federal question, to resolve whether diversity jurisdiction exists on a petition to compel arbitration,

a court considers whether the amount in controversy between the parties satisfies the jurisdictional

minimum by "looking through" to the entire, actual controversy between the parties as they have

framed it in state court); *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir. 1995) ("[T]he

amount in controversy in a petition to compel arbitration... is determined by the underlying cause

of action that would be arbitrated."). But see *We Care Hair Dev., Inc. v. Engen*, 180 F.3d 838, 841

(7th Cir. 1999) ("Since the present suit is not a removal suit but rather an independent federal suit,

it is the stakes of the arbitration and not the possible state court award that control."). Therefore, the amount in controversy generally can be satisfied by showing that the state court plaintiffs seek damages against the state court defendants in excess of $75,000". See also *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994) (citation and internal quotation omitted) ("A party invoking the jurisdiction of the federal court has the burden of proving that it appears to a reasonable probability that the claim is in excess of the statutory jurisdictional amount.") and ("The amount in controversy is determined at the time the action is commenced."). Id.

Here regarding Subway's petition, the amount of rent Subway Real Estate, LLC claimed I was in default in the Milwaukee eviction action filed June 30th, 2015 was $19,915.67 (see attached copy of the eviction complaint).  My monthly base rent for 2015 was something around $2500/mo. for the leased space plus utilities.  With my Subway store closed sometime in August, there really aren't any significant utilities since then so the most I owe Subway Real Estate, LLC through the end of the yearly lease term would be at most another $15,000 or so.  In the end, I think Subway Real Estate, LLC settled with the building owner for around $40,000.   My counter-claims in the Milwaukee County eviction action against Subway Real Estate, LLC won't be worth all that much because I'm on the verge of filing bankruptcy.  The bankruptcy will discharge Subway's claim against me and my remaining counter-claims will likely be limited to less than $75,000.   I don't think this court has jurisdiction to consider Subway's petition because the total amount of controversy as framed in the Milwaukee County eviction action is substantially less than $75,000 (even though I've made a damage claim which is greater, if you look at the facts, I'll probably not be able to prove much more than $50,0000.   I don't think that Subway's petition satisfies the requirement of 28 USC 1332(a) for this court to have jurisdiction.

IV.     **Franchise Agreement is Unconscionable.**

I contend that the Subway franchise agreement is procedurally or substantively

unconscionable.  By that I mean, how  I can I arbitrate a dispute in Connecticut about Subway

who had a part in putting me out of business by siting 2 competing stores only 1-1.5 blocks away

from my failed store where Subway has bankrupted me and my family by its unfair, bad faith

actions.   I signed the franchise agreement here in Milwaukee.  I've never ever even been to

Connecticut that I recall.  The franchise agreement talks about Connecticut law applying

(paragraph 13).

  a.  **Wisconsin Fair Dealership Law**.  I'm told, Wisconsin has a franchise law which if it

applies, may negate the enforceability of Subway's franchise agreement with me.  Under Wis.

Stat. 135.025, if a forum selection clause in a dealership agreement is not freely bargained for, it

can be rendered ineffective under §135.025(2)(b).   Similarly, the choice of law clause in the

franchise agreement may be unenforceable under Wis. Stat. 135.025.  The choice of law clause in

a dealership agreement was unenforceable in Bush v. National School Studios, 139 Wis.2d 635,

407 N.W.2d 883 (1987).  Similarly under Wis. Stat. 135.03, Subway was possibly barred from

changing the competitive circumstances without good cause.  Economic duress may serve as a

basis for a claim of constructive termination of a dealership.  *JPM, Inc. v. John Deere*, 94 F.3d 270

(1996).   See also *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of*

*America*, 700 F. Supp. 2d 1055 (2011).  Affirmed in part, reversed in part. 646 F.3d 983 (2011). I

believe Wisconsin's Fair Dealership Law should be one basis for this court to provide me relief

from Subway's unconscionable conducted directed against me and their attempt to force me to

arbitrate in Connecticut over 1000 miles from Milwaukee (for the only reason being to make it so

difficult and expensive that I really have no meaningful recourse to pursue my claims).

**b. Unconscionabity**.  Wisconsin recognizes unconscionability as grounds for a court to refuse to enforce certain one-sided contract provisions which is what is going on here.   It is defined as "the absence of meaningful choice on the part of one of the parties, together with contract terms that are unreasonably favorable to the other party." *Wis. AutoTitle Loans, Inc. v. Jones*, 290 Wis. 2d 514, 533 (2006).   ("A determination of unconscionability requires a mixture of both procedural and substantive unconscionability that is analyzed on a case-by-case basis.") ("[S]ubstantive unconscionability alone may support a finding of unconscionability [but] procedural unconscionability without any substantive imbalance will rarely render a contract unconscionable."). Substantive unconscionability focuses on the contents of a contract to see if its terms unreasonably oppress one of the parties. *Wis. Auto Title Loans*, 290 Wis. 2d at 536; Procedural unconscionability focuses on the formation of the contract to determine whether there was "a real and voluntary meeting of the minds." *Wis. Auto Title Loans*, 290 Wis. 2d at 534–35.

### 1. Connecticut Uniform Commercial Code provides in Section 42a-2-302 -

> (1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

Unfair Trade Practices Act (CUTPA) .

"The purpose of the doctrine of unconscionability is to prevent oppression and unfair surprise . Unconscionability is a question of law to be determined by the court in light of all the facts and circumstances of the case . The Uniform Commercial Code, as adapted by Connecticut courts, contains a basic test for examining a claim of unconscionability.   That test is whether, in light of the general commercial background and the commercial needs of the particular trade . the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the

time of the making of the contract."   (Citations omitted;  internal quotation marks omitted.)

Edart Truck Rental Corp. v. B. Swirsky & Co., 23 Conn.App. 137, 142, 579 A.2d 133 (1990).

Furthermore, "[t]he party unconscionability bears the burden of proof [and] the defendant's mere

assertion of unconscionability is insufficient to establish the special defense.   The fact that a party

to a contract comes to regret one of its provisions does not render the contract unconscionable."

(Citation omitted;  internal quotation marks omitted.)   *New England Retail Properties, Inc. v.*

*Maturo*, 102 Conn.App. 476, 490, 925 A.2d 1151, cert. denied, 284 Conn. 912, 931 A.2d 932

(2007).

**2. Conn. Stat. Sec. 42-110b. Unfair trade practices prohibited.** (a) No person

shall engage in unfair methods of competition and unfair or deceptive acts or practices

in the conduct of any trade or commerce.

**c.   Waiver.**   I believe Subway has waived its right to arbitrate based on its dismissal of the

prior action it filed against me back in 2015 see 15-cv-01450 in this same court.   Ordinarily a

party waives its right to arbitrate when it "initially pursues litigation and then reverses course and

attempts to arbitrate...."   *Texaco Exploration & Prod. Co. v. AmClyde Engineered Prods. Co., Inc.,*

243 F.3d 906, 911 (5th Cir.2001) (citing *Subway Equipment Leasing Corp. v. Forte,* 169 F.3d 324,

329 (1999)).

**d.   Laches.**   "The defense of laches, if proven, bars a plaintiff from seeking equitable

relief.  First, there must have been a delay that was inexcusable, and, second, that delay must have

prejudiced the defendant."   *Florian v. Lenge*, 91 Conn.App. 268, 281, 880 A.2d 985 (2005).

"The burden is on the party alleging laches to establish that defense."   *Cummings v. Tripp*, 204

Conn. 67, 88, 527 A.2d 230 (1987).   "The mere lapse of time does not constitute laches unless it

results in prejudice to the [opposing party] as where, for example, the [opposing party] is led to

change his position with respect to the matter in question." *Fromm v. Fromm,* 108 Conn.App. 376, 385-86, 948 A.2d 328 (2008).

It is my position that Subway has waited to long to request this arbitration. I've been litigating my counter-claims in Milwaukee Circuit Court for nearly 2 years arising from a lawsuit Subway Real Estate, LLC commenced against me. I didn't start this litigation, they did. The window for me to join in Subway Corporate (i.e. Doctor's Associates, Inc.) in the Milwaukee litigation closed with the scheduling order of July 8, 2016 which set that date to 8/19/16.

Subway Corporate is essentially asking for equitable relief in their injunction, but it now puts me in an impossible position if this court grants Subway their request for an injunction to prevent me from litigating my claims here in Wisconsin. My Milwaukee attorney can't / won't represent me in Connecticut. I'm on the verge of filing bankruptcy and have no money to hire any new attorneys (other than my bankruptcy attorney), and its simply unconscionable for Subway first to have put me out of business because they put 2 competing stores within 1.5 blocks of me in downtown Milwaukee, then now to try and force me to go 1000 miles away to participate in arbitration in Connecticut all when I have no money and all my witnesses are in the Milwaukee area. Subway sure knows how to treat their formerly loyal and dedicated store owners.

Dated this March 29, 2017.

/s

Ivars R. Repins, pro se
1917 E. Kenmore
Shorewood, WI 53211
414-791-3926

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

DOCTOR'S ASOCIATES, INC.                          :
                                                  :
                    Plaintiff,                    :
                                                  :
v.                                                :          Case No. 3:17-CV-00323
                                                  :
Ivars Repins,                                     :
                                                  :
                    Defendant.                    :          Date: 3/29/17
                                                  :

---

## AFFIDAVIT IVARS REPINS

Ivars Repins, duly sworn on oath, states as follows:

1. I am an adult resident of the State of Wisconsin residing at 1917 E. Kenmore, Shorewood, WI 53211 (Shorewood is a community in Milwaukee County).

2. I have pending in Milwaukee County Circuit Court various counter-claims against Subway Real Estate, LLC  ("SRE") related to my lease of space in Milwaukee, Case No. 15-CV-5447.  Subway Real Estate has told me in the Milwaukee litigation that they have no direct relationship with Subway Corporate ("Doctor's Associates, Inc.").  This came out when I asked for copies of correspondence, communications and market studies in the Milwaukee case from Subway Real Estate, LLC who refused to provide me any information saying it was in Subway Corporate's hands.  But I know this isn't true because I saw the Subway Real Estate, LLC representatives in my store doing audits before they leased these competing locations.  Furthermore, they told me not to worry that the competing stores would not affect my sales, which I now know was a big fat lie.

3. I'm basically broke and I'm in the process of filing bankruptcy.  This is all the result of Subway Real Estate, LLC leasing space to 2 competing Subway franchises less than 1.5

blocks from where my downtown Milwaukee store was located for more than 10 years before the new locations were leased by Subway Real Estate, LLC to the new franchisees (one of which was my own local Subway development agent).

4. When I signed the Subway franchise agreements and leases, it was presented to me on a take it or leave it basis but together with the misrepresentation that not to worry, I was told, we (Subway) wouldn't put any competing sandwich stores by me because I put together such a nice store with more than double the seating and floor space of most stores. When I went to sign the lease with Subway Real Estate, LLC (actually it was originally known by another name like Subway Real Estate Corporation or something like that), they told me the same thing which I now know was a fraud.

5. Attached is a true and correct copy of the Amended Answer, Affirmative Defenses and Counter-Claims in the Milwaukee County Case (exhibit 1), together with a copy of the scheduling order (exhibit 2).

6. Based the fact I will be filing bankruptcy shortly (and my anticipation of getting a discharge of Subway's claims against me) and the fact that although I have substantial damages and injuries I've incurred as a result of Subway Real Estate, LLC putting me out of business, I believe that at the end of the day in the Milwaukee litigation, the amount in dispute with Subway Real Estate, LLC and/or Subway Corporate is less than $75,000 such that it is unlikely there is any diversity jurisdiction under 28 USC 1332.

Dated this March 29, 2017.

STATE OF WISCONSIN
COUNTY OF MILWAUKEE

This signature was acknowledged before me this _4th_ day of _April_, 2017 by Ivars Repins.

Notary's Signature: _Diane dewindthall_
Notary's Expiration Date: _02.18.2018_

Ivars R. Repins, pro se
1917 E. Kenmore
Shorewood, WI 53211
414-791-3926

NOTARY PUBLIC
DIANE
De WINDT-HALL
STATE OF WISCONSIN



STATE OF WISCONSIN:      CIRCUIT COURT:      MILWAUKEE COUNTY:

Subway Real Estate, LLC

              Plaintiff                Case No.

v.                                    Case No. 15-SC-17459

Ivars Repins

              Defendant      Case Codes  #31004, 30106, 30107, 30301

FILED

NOV 1 6 2015

JOHN BARRETT
Clerk of Circuit Court

## AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

Ivars Repins, by attorney Gary W. Thompson, Thompson Law Offices, S.C., provides an amended answer, affirmative defenses and counter-claims to the plaintiff's complaint as follows:

### AMENDED ANSWER

1. Defendant admits the allegation of paragraph 1 of the complaint and withdraws his previous allegation that Doctors Associates, Inc. ("DAI")(Subway Corporate) is a necessary party which must be joined in this action because defendant believes that a judgment against the plaintiff here for his damages will make him whole.

2. Defendant admits the allegation of paragraph 2 of the complaint to the extent the franchise documents accurately reflect defendant as franchisee.

3. Defendant admits the allegation of paragraph 3 of the complaint.

4. Defendant admits the allegation of paragraph 4 of the complaint.

5. Defendant admits the allegation of paragraph 5 of the complaint and further affirmatively states that the plaintiff, by filing this action, has waived the arbitration provision of the agreements between defendant, the plaintiff and the plaintiff's corporate parent DAI (Subway Corporate) and/or the arbitration agreement is unconscionable.

6. Defendant realleges the preceding answers and defenses as if fully setforth herein.

7. Defendant admits the allegation of paragraph 7 of the complaint.

1

EXHIBIT 1

8.   Defendant admits the allegation of paragraph 8 of the complaint.

9.   Defendant admits the allegation of paragraph 9 of the complaint.

10.  Defendant admits the allegation of paragraph 10 of the complaint.

11.  Defendant admits that part of the allegation of paragraph 11 of the complaint
     that Repins on 8/27/02 entered into a written sublease, however, Repins denies
     the legal conclusions and put the plaintiff to its proof to the remaining
     allegations.

12.  Defendant admits the allegation of paragraph 12 of the complaint.

13.  Defendant admits the allegation of paragraph 13 of the complaint.

14.  Defendant admits the allegation of paragraph 14 of the complaint.

15.  Defendant admits the allegation of paragraph 15 of the complaint.

16.  Defendant admits the allegation of paragraph 16 of the complaint.

17.  Defendant admits the allegation of paragraph 17 of the complaint.

18.  Defendant admits the allegation of paragraph 18 of the complaint.

19.  Defendant admits the allegation of paragraph 19 of the complaint.

20.  Defendant denies the allegation of paragraph 20 of the complaint and puts the
     plaintiff to its proof thereon; alternatively, defendant's affirmative defenses
     may constitute a full exoneration and/or defense to the plaintiff's allegation of
     default.

21.  Defendant is without sufficient knowledge or information to form a belief as
     to the truth of the allegations of paragraph 21 of the complaint and therefore
     denies same; alternatively defendant's affirmative defenses may constitute a
     full exoneration and/or defense to the plaintiff's claim for costs, expenses and
     attorney fees.

22.  Defendant denies that he retains control of premises and denies the remaining
     allegations of paragraph 22; alternatively defendant's affirmative defenses
     may constitute a full exoneration and/or defense to the plaintiff's allegations
     and claims.

23.  Defendant realleges the preceding answers and defenses as if fully setforth
     herein.

2

24. Defendant denies the allegations of paragraph 24 of the complaint.

25. Defendant denies the allegations of paragraph 25 of the complaint.

26. Defendant denies the allegations of paragraph 26 of the complaint and states he has surrendered possession of the premises to the plaintiff but maintains his personal property on the premises with the consent of the plaintiff and landlord until the plaintiff or a 3rd party purchases his personal property or the plaintiff's requests defendant's property be removed.

27. Defendant denies the allegations of paragraph 27 of the complaint.

28. Defendant denies the allegations of paragraph 28 of the complaint.

## FACTS COMMON TO ALL AFFIRMATIVE DEFENSES AND COUNER-CLAIMS

29. Defendant realleges the preceding answers and defenses as if fully setforth herein.

30. Doctors Associates, Inc. ("DAI"), the Subway franchisor, is typically referred to by franchisees like the defendant as "Subway Corporate".

31. On information and belief, the plaintiff Subway Real Estate, LLC holds a separate legal existence from Subway Corporate (DAI), nevertheless, Subway Real Estate, LLC is subject to the total domination and control by Subway Corporate as it relates to defendant Repins.

32. In the late 1990s and into the early 2000s, defendant operated his Subway franchise in a small leased space at the Century Building immediately to the east of the current location at 228 W. Wells Street. At the time, defendant's franchise was the only Subway sandwich shop in the downtown area.

33. Defendant believing that if he had a larger space, he could attract more customers and make a greater profit; accordingly, he developed a business plan to relocate his Subway store to large space in the Century Building.

34. In approx. 1999-2000, defendant with the support and encouragement of the plaintiff (or its predecessor), DAI (Subway Corporate), and Subway Corporate and Subway Real Estate's Development Agent ("DA"), negotiated a lease with Century Building, LLC's predecessor to lease the 3x larger space at 228 W. Wells Street.

3

35. Under DAI's franchise agreement (Subway Corporate), on information and belief, the franchisee locates prospective space to operate a franchise and also negotiates an option to lease the space with the property owner. Subway Real Estate, LLC through the control and direction of Subway Corporate coordinates the primary lease agreement and its terms for any proposed new store. If an option is negotiated, then, the franchisee must assign the lease option to Subway Real Estate which then enters the lease with the property owner. Subway Real Estate then at the direction of Subway Corporate sublets the leased space to the franchisee. By this method, Subway Real Estate is able to fully control the location of new stores, as wells as Subway Corporate's franchisees, and additionally, prevent competing sandwich shops from taking over a sandwich shop location.

36. On information and belief, under the franchise agreement, neither Subway Corporate nor Subway Real Estate contributes any funds to make the necessary improvements to establish a Subway store. All the physical improvements to the leased space are paid for by the franchisee or his lenders/investors. Here, defendant and his family invested upwards of over $150,000 to improve the larger leased space at 228 W. Wells Street, i.e. gutting the space, installing plumbing, bathrooms, kitchen, electric service, new air conditioning, flooring, etc.

37. Defendant profitably operated the Subway store at 228 W. Wells Street for a number of years after 2002, which profits continued until the plaintiff, with the approval of the local subway Development Agent Mike Jamason, began negotiating leases to open competing Subway stores only blocks away from the defendant's store in downtown Milwaukee.

38. Defendant's initial geographic market area (i.e. where he drew customers from) during the first years he profitably operated the expanded store from approximately 2002-2006, was generally from Milwaukee School of Engineering to the east, to North Avenue to the north, to Marquette University to the west, to the 5th Ward to the south.

**Seven New Nearby Subway Stores in 10 years Undermine Defendant's Revenues and Violate the Franchise Agreement.**

39. In approximately 2005-06, the plaintiff or its predecessor in interest, under the direction and encouragement of the DA Mike Jamason and/or Subway Corporate, located a new Subway store at the Grand Avenue Mall just 1 block south of defendant's Subway store on Wells Street. Defendant lost the Wisconsin Electric Company customer lunch crowd who among others use to patronize his store.

40. In approximately 2006-07, the plaintiff or its predecessor in interest, under the direction and encouragement of the DA Mike Jamason and/or Subway

4

Corporate, located a new Subway store at North 3rd Street and North Avenue. As a result, Defendant lost the Time-Warner Cable lunch crowd who among others use to patronize his store.

41. In approximately 2010-11, the plaintiff or its predecessor in interest, under the direction and encouragement of the DA Mike Jamason and/or Subway Corporate, located a new Subway store, located a new Subway store at 7th and Wisconsin, 1 block south and 4 blocks west of defendant's Subway store on Wells Street.  Defendant lost the Courthouse, 611 West Wisconsin and other West Wisconsin office customer lunch crowd who among others use to patronize his store.

42. In approximately 2010-11, the plaintiff or its predecessor in interest, under the direction and encouragement of the DA Mike Jamason and/or Subway Corporate, located a new Subway store, located a new Subway store at Juneau and N. Van Buren Street, 7 blocks east and 3 blocks north of defendant's store.  Defendant lost many of his Kilbourn Avenue and Milwaukee School of Engineering customers who among others use to patronize his store.

43. In approximately 2011, the plaintiff or its predecessor in interest, under the direction and encouragement of the DA Mike Jamason and/or Subway Corporate, located a new Subway store, located a new Subway store at 1009 S. 1st Street in the 5th Ward approx. 14 blocks south of defendant's store. Defendant lost a significant amount of his 5th Ward customers who use to patronize his store for sandwich patters and other take out and catered items.

44. In approximately 2010-11, the plaintiff or its predecessor in interest, under the direction and encouragement of the DA Mike Jamason and/or Subway Corporate, located a new Subway store, located a new Subway store at the corner of Plankinton Ave. and Wisconsin, 1/2 block east and 1 block south of defendant's Subway store on Wells Street.  Defendant lost much of the rest of his lunch customer crowd along east Wisconsin Avenue who among others, use to patronize his store.

### Subway's Advertising Promotions Undermined Defendant's Ability to Pay Rent.

45. Subway Corporate's control of advertising promotions and requirement that its franchisees like defendant must sell volumes of food products as a loss, undermine defendant's profitability such that he cannot not generate enough revenue to pay expenses like rent.

46. Over approximately the past 4 years, Subway Corporate with the knowledge and consent of Subway Real Estate, LLC, has implemented numerous sales promotions multiple times each year like: (i) the $5 Foot Long Sub Sandwich Special, i.e. any sub for $5.  Volumes of people then come into the store and

purchase high cost meat sandwiches which defendant loses money on each of them; (ii) Breakfast Special – 6" Sub with free coffee for $3.00. Defendant's cost for the food product is $3.00, leaving no revenue for expenses like rent; (iii) 6" Sub for $2.00; and (iv), Coupons, buy one get one free. Additionally, Subway Corporate required defendant to accept any competing coupons as well. The problem is that Subway Corporate never reimbursed defendant for any coupons. Defendant being forced to sell substantial volumes of product at a loss is a substantial cause of defendant's in ability to make rent payments and make a profit.

47. On information and belief, it is important to understand the plaintiff and Subway Corporate's business model. Subway Corporate with the knowledge and consent of Subway Real Estate, LLC, exacts a franchisee fee of 12.5% of gross sales. On information and belief, this fee is divided up approximately as follows: the local development agent (DA) gets 1-2%, Subway commits 4-5% to an advertising fund, and Subway Corporate gets the balance of 5.5% to 7.5%, which also directly or indirectly benefits Subway Real Estate, LLC. Subway Corporate, its local DA and Subway Real Estate, LLC, under this business model, make a profit[1] whether or not the franchisee can generate sufficient revenue to pay the rent and other expenses.

48. On information and belief, at all times relevant, the plaintiff Subway Real Estate, LLC acted in its dealings with the defendant by and through the DA Mike Jamason. At each instance the plaintiff entered a lease with the 7 competing Subway franchisees indentified above, DA Mike Jamason represented to the defendant that the plaintiff was aware that there was more than enough customer demand such that none of the new Subway franchises or newly leased spaces would adversely affect the defendant's customer traffic or revenue.

49. On information and belief, Subway Real Estate, LLC acted at all times by and through DA Mike Jamason to undermine and interfere with the defendant's revenues and profits by leasing competing Subway stores to Subway Corproate's franchisees.

50. On information and belief, substantially all information regarding store revenues and sales, market studies and store operations are the joint knowledge of Subway Corporate and Subway Real Estate, LLC (or its predecessor in interest).

---

[1] On information and belief, Subway Corporate also makes a profit on the foods and dry goods which a franchisee like the defendant must purchase from Subway Corporate or one of its subsidiaries for resale.

## AFFRMATIVE DEFENSES

51. Defendant realleges the preceding answers and defenses as if fully setforth herein.

52. Plaintiff's claims are barred in whole or part by among the following affirmative defenses and claims:

   a. Equitable Estoppel. Some or all of the plaintiff's claims are barred by the doctrine of equitable estoppel.

   b. Unconscionability. Some or all of the plaintiff's claims are barred by §402.302 and the common law doctrine of unconscionability.

   c. Unclean Hands. Some or all of the plaintiff's claims are barred by the doctrine of unclean hand in that it acted unjustly, either directly or indirectly in its dealings with defendant. Plaintiff should be barred recovery against defendant because any losses related to rent liability are the direct consequence of the plaintiff's own wrongful doing of leasing competing Subway stores only blocks away undermining defendant's ability to generate a profit.

   d. Breach of Contract. Plaintiff has breached its lease agreement with the defendant, specifically, §401.304 obligation of good faith and fair dealing under the lease by knowingly leasing space to numerous competing Subway stores in defendant's marketing area, thereby undermining defendant's ability to make a profit at his store and pay operating expenses like rent, entitling defendant to rescission of the lease agreement, the sublease and recovery of his damages, including setoff of plaintiff's damages and/or recoupment of defendants losses.

   e. Mitigation of Damages. Plaintiff has failed to mitigate its damages to the extent any such cognizable damages exist.

   f. Right of Recoupment/Set Off. To the extent defendant is held liable for any of the plaintiff's damages, defendant is entitled to recoupment and/or setoff off for its damages caused directly or indirectly by the plaintiff acting under the domination or control of DAI (Subway Corporate).

   g. Violation §100.20. The plaintiff's practices, as alleged above, affecting defendant, may constitute unfair trade practices and/or methods of competition in violation of §100.20 and/or the applicable administrate code provisions. Such violation may constitute a defense to plaintiff's claims and allow defendant to rescind the franchise agreement and/or lease and/or to recover 2x defendant's pecuniary damages and reasonable attorney fees against the plaintiff.

7

h. <u>Violation of Ch. 553</u>. Subway Real Estate, LLC may have violated provisions of the Wisconsin Franchise Law, Chapter 553 which may constitute a defense to plaintiff's claims by entitling defendant to injunctive relief and/or damages, and reasonable attorney fees in set off of plaintiff's claims.

i. <u>Rescission</u>. The plaintiff's conduct, while acting with the knowledge and/or consent of DAI (Subway Corporate), may entitle defendant to rescind the franchise agreement and/or lease by statute or under common law; if so, then defendant may be entitled to equitable remedies under theories of quantum meruit or unjust enrichment in setoff of plaintiff's claims.

j. <u>Contract.</u> If defendant's equitable and/or other claims and defenses fail, then defendant may be entitled to the value of his improvements under his contractual agreements with the plaintiff and/or DAI (Subway Corporate).

k. Any injury or damages complained of by the plaintiff were expressly caused by its acts or omissions.

l. All allegations not previously admitted, denied, or otherwise specifically addressed are denied.

m. Defendants reserve the right to assert additional affirmative defenses which discovery or other investigation may reveal to applicable.

## COUNTER-CLAIMS

### CLAIM 1 – Fraudulent Misrepresentation.

53. Defendant realleges the preceding answers and defenses as if fully setforth herein.

54. On information and belief, Subway Real Estate, LLC (or its predecessor in interest) fraudulently misrepresented to Repins in order to induce him to enter the sublease, that it would not, that neither Subway Corporate nor Subway Real Estate, LLC would complete within Repins area by placing competing stores close by or otherwise interfere with his existing or future customers.

55. Subway Real Estate, LLC's representation that it would not compete with Repins or interfere with his customers (even in light of the language in the Franchise agreement), was untrue as demonstrated by Subway Real Estate, LLC's future leases to competing franchisees within blocks of Repins' store.

8

56. Subway Real Estate, LLC (or its predecessor in interest) made the misrepresentations knowing they were untrue or recklessly with you caring whether it was true or false.

57. Subway Real Estate, LLC made the representation with intent to deceive Repins so he would sign the lease such that he act upon it to his pecuniary damage.

58. Repins believed the verbal misrepresentations of Subway Real Estate, LLC to induce him to sign the lease which misrepresentations Repins relied upon.

## CLAIM 2 – Strict Responsibility for Misrepresentation.

59. Defendant realleges the preceding answers and defenses as if fully setforth herein.

60. On information and belief, Subway Real Estate, LLC (or its predecessor in interest) fraudulently misrepresented to Repins in order to induce him to enter the sublease, that it would not, that neither Subway Corporate nor Subway Real Estate, LLC would complete within Repins area by placing competing stores close by or otherwise interfere with his existing or future customers.

61. Subway Real Estate, LLC's verbal representation that it would not compete with Repins or interfere with his customers (even in light of the language in the Franchise agreement), was untrue as demonstrated by Subway Real Estate, LLC's future leases to competing franchisees within blocks of Repins' store.

62. Subway Real Estate, LLC made the representation as a fact based on its own personal knowledge (made by the Subway Development Agent), which the plaintiff should have known the truth or untruth of the statement.

63. Subway Real Estate, LLC had an economic interest in the transaction.

64. Repins believes such misrepresentations and relied upon them to his detriment.

## CLAIM 3 – Tortious Interference with Prospective Contractual Relationships.

65. Defendant realleges the preceding answers and defenses as if fully setforth herein.

66. Subway Real Estate, LLC tortuously interfered with Repins' prospective business relationships with customers by leasing to competing Subway

franchises near Repins store knowing that such competition would dilute Repins customer base and store revenues.

67. Subway Real Estate, LLC (or its predecessor in interest), by leasing Subway stores to competing Subway franchisees within blocks of Repins location, knowingly allowed such competing stores to operate and knew or should have known that such stores would interfere with the prospective contractual relations which Repins had with his existing customers or future customers.

68. Subway Real Estate, LLC's purpose to interfere was done to assist itself in profiting from lease revenue and also to assist Subway Corporate from which plaintiff maintains its existence.

69. Repins has been injured by the intentional conduct of Subway Real Estate, LLC in its interference with Repins prospective contractual relationships with his customers (past, present and future).

## CLAIM 4 – Negligent/Intentional Infliction of Emotional Distress.

70. Defendant realleges the preceding answers and defenses as if fully setforth herein.

71. As a result of the financial decline and recent collapse of Repins Subway store caused by competing Subway stores in the immediate vicinity of 228 W. Wells, Repins has suffered physical injury and severe debilitating emotional distress.

72. Plaintiff owed a duty of care to the plaintiff to protect Repins from unreasonable risk of financial collapse in his Subway franchise business.

73. Plaintiff either intentionally caused or breached its duty of care by failing to protect Repins from the injurious actions of Subway Corporate and/or its development agent in developing competing Subway store locations near defendant as it had final control over allowing a specific property to be subleased to a 3rd party franchisee.

74. Plaintiff's intentional/negligent conduct was a substantial cause of the physical injuries and severe emotional distress suffered by Repins.

75. Repins has suffered extreme emotional distress as a result of the plaintiff's conduct which acts or omissions are substantial causes of Repins physical injury and severe and debilitating emotional distress.

WHEREFORE, Repins requests the court grant him the following relief:

a. Determine what liability, if any, he has under the lease agreement with plaintiff.

b. Recoupment for all rents and other charges he has over paid as a result of the plaintiff's misconduct.

c. Award of a money judgment against the plaintiff in an amount sufficient to compensate Repins for his lost investments in the build out of the leased space, lost profits both past and future, as well as the damages he has suffered.

d. Award of a money judgment for Repins past and present emotional distress and active pain and suffering.

e. Defendants costs and disbursement herein, including reasonable attorney fees as allowed by law.

Dated  this November 16, 2015.

Gary W. Thompson (SB#1001928)
Counsel for Ivars Repins

Address:
Thompson Law Offices, S.C.
808 N. 3rd Street #406
Milwaukee, Wisconsin 53203
(414) 273-2144

STATE OF WISCONSIN          CIRCUIT COURT          MILWAUKEE COUNTY

Subway RE

vs.                                          **Plaintiff(s)**          **CIVIL DIVISION SCHEDULING ORDER**

Regins                                                     CASE # ___15 CU 547___

                                            **Defendant(s)**

Pursuant to Wis. Stat. § 802.10(3) and Local Rule 3.8.C., **IT IS HEREBY ORDERED:**

Parties shall comply with the Circuit Court Local Rules and with SCR 62.02, the Standards of Courtesy and Decorum.

1. On or before _____8/19/16_____ any amendments to the pleadings, including the naming of any additional parties, shall be completed.  If any additional party is named, a copy of this Order shall be served with the summons and complaint.

2. On or before _____8/19/16_____ the jury fee shall be paid or, pursuant to Local Rule 3.9, all parties shall be deemed to have waived their right to a jury.

3. On or before the dates set forth below, the parties shall serve, pursuant to Local Rule 1.13,
     (a) the names and addresses of lay witnesses and a brief summary of their anticipated testimony;
     (b) the name, address, resume and written report of each expert witness (any witness who will give an expert opinion at trial on any subject); and
     (c) an itemized statement of damages, including any claim of permanency.
   No party is required to supply a separate report for an expert who's opinions at trial will be limited to and consistent with opinions that are stated in medical records previously generated by that witness.  The witness will be limited to opinions in those records.  The party intending to adduce such an opinion shall, on or before the date set below, summarize and identify where in the records the opinions are located.

   By Plaintiff: __11/4/16__, by Defendant: __2/10/17__, by Third Party: __5/12/17__
   *will list in*
   *π response to CC-*
   **Witnesses and damage claims not disclosed in full compliance will be excluded from trial, unless good cause is shown.**

4. On or before _____9/1/17_____, all discovery (except depositions for use at trial) shall be complete.
   *See Local Rule 3.21 (timely completion of discovery).*

5. On or before _____8/4/17_____, all dispositive motions shall be ~~filed.~~ heard
   ☒ The parties agree to the dispositive pretrial motion briefing schedules set forth in Local Rules 3.14 and 3.15.

6. On or before _____9/13/17_____, the parties shall complete mediation. Parties shall select a mediator by mutual agreement. In the absence of agreement __James Kiefer__, shall serve as mediator. Unless otherwise ordered by the court, all fees shall be divided equally among the parties.  The parties and their attorneys shall participate in person.  Any corporate party or other organization shall appear, in addition to counsel of record, by an individual who shall have full authority to make or modify offers and to approve a final settlement without the need to seek approval from any other person, unless the mediator permits otherwise.  A party who fails to comply with this provision may be ordered to pay all costs of the mediation and be subject to further sanctions.

2777-1 R3

**EXHIBIT 2**

**CIVIL DIVISION SCHEDULING ORDER**                    CASE #: ___15 CV 944___

7.  The pretrial conference will be on _____ 10/4/17 _____ at 9:00 AM o'clock.
    Counsel who actually will try the case shall be present.  A date for trial, if needed, will be set at the conference.

8.  At least TWO WEEKS before the pretrial conference, each party shall file a pretrial report.  The report shall:

    A.  Summarize in detail, in no more than 2 pages, the facts of the case, issues and theories of liability or defense, and evidentiary issues.

    B.  Identify each trial witness and summarize in detail his or her testimony.

    C.  List all exhibits to be offered at trial.  The exhibits shall be made available for inspection upon the request of any other party as of the filing of the Exhibit List.

    D.  Designate all portions of any deposition that will be read or displayed to the jury.

    E.  Include all motions in limine, including Daubert objections to any expert testimony, along with supporting briefs and affidavits.

    F.  State that mediation is complete and whether settlement negotiations are ongoing.

    G.  Propose stipulations that resolve undisputed issues and will save the jury and the court time and effort at trial.

    H.  Include, if a jury trial is requested: (1) a list of all proposed jury instructions (numbers and titles only, unless requesting modified or special instructions); and (2) a proposed verdict form;

    I.  Include, if a court trial is requested, proposed findings of fact and conclusions of law.

9.  The deadlines set forth in this order may not be extended without the consent of the court.

10. OTHER ORDERS:   If any MIL are filed a briefing schedule
    will be set up if necessary.  MIL will be heard in advance of
    trial

The court will sanction parties who fail to comply with the provisions of this order without good cause.
Sanctions may include entering judgment or dismissing claims or defenses.  See Wis. Stats. §§ 804.12 & 805.03.

_____
Attorney   James C. Reampton for Plaintiff

_____
Attorney

_____
Attorney

Dated this 8 day of July, 2016

BY THE COURT:

_____
Circuit Court Judge

1674-2

IVARS REPINS
1917 E. KENMORE PL.
SHOREWOOD, WI. 58211

DISTRICT COURT
141 CHURCH ST
NEW HAVEN, C