UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| DOCTOR'S ASSOCIATES, INC., | : | |
|---|---|---|
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 17-CV-323 (JCH) |
| v. | : | |
| | : | |
| IVARS REPINS, | : | MAY 4, 2017 |
| Defendant, | : | |
| | : | |

**RULING ON PETITION TO COMPEL ARBITRATION (DOC. NO. 1) AND MOTION FOR PERMANENT INJUNCTION (DOC. NO. 3)**

**I.     INTRODUCTION**

The plaintiff, Doctor's Associates, Inc. ("DAI" or "Subway"), has filed a Petition to Compel Arbitration (Doc. No. 1) and a Motion for Permanent Injunction (Doc. No. 3), against the defendant, Ivars Repins ("Repins"). Repins, pro se, opposes both the Petition and the Motion. See Answer/Response (in pages 1–5 of Doc. No. 17) ¶¶ 25–27. Repins argues that (1) "the arbitration agreement is procedurally or substantively unconscionable," (2) DAI's "actions directed against [Repins] are a breach of [DAI's] duty of good faith and fair dealings," (3) DAI "or its affiliates have waived any right to complain about litigating [the] dispute in Milwaukee County Circuit Court," (4) the present suit "should be barred by the doctrine of laches," (5) the court lacks diversity jurisdiction, (6) Repins does "not presently have any pending dispute in litigation with [DAI] requiring this court's involvement," (7) DAI's "actions directed against" Repins "are unconscionable," and (8) if arbitration does occur, the arbitration should occur in Milwaukee, Wisconsin. Id. ¶¶ 25–27.

For the reasons stated below, DAI's Petition to Compel Arbitration is **granted** to the extent that it seeks to compel arbitration but **denied** to the extent that it asks this

1

court to award attorney's fees and costs. DAI's Motion for Permanent Injunction is **denied**.

## II. BACKGROUND

On May 13, 2002, the parties signed Franchise Agreement Number 903 (Doc. No. 1-1) for the operation of a Subway restaurant. See Franchise Agreement No. 903. On September 22, 2010, they signed Franchise Agreement Number 25752 (Doc. No. 1-2). See Franchise Agreement No. 25752. Franchise Agreement Number 25752 states that it "has revised provisions regarding [topics including] dispute resolution," and that Repins "agree[s] to accept the provisions set forth in [sections including] Paragraph[ ] 10" in Franchise Agreement Number 25752 "to the amendment of all of [Repins's] other existing Franchise Agreements with [DAI] to include these provisions." Id. ¶ 14.

Paragraph 10 of Franchise Agreement Number 25752 discusses arbitration. See Id. ¶ 10. The paragraph states as follows:

> Any dispute, controversy or claim arising out of or relating to this Agreement or the breach thereof shall be settled by arbitration. . . .
>
> The parties agree that Bridgeport, Connecticut shall be the site for all arbitration hearings held under this Paragraph 10 . . . .
>
> If you breach the terms of your Sublease, the Sublessor, whether us or our designee, may exercise its rights under the Sublease, including your eviction from the franchised location. Any action brought by the Sublessor to enforce the Sublease (which provides that a breach of the Franchise Agreement is a breach of the Sublease), is not to be construed as an arbitrable dispute. . . .
>
> You agree that our Affiliates, shareholders, directors, officers, employees, agents and representatives, and their affiliates, shall not be liable nor named as a party in any arbitration or litigation proceeding commenced by you where the claim arises out of or relates to this Agreement. You further agree

> that the foregoing parties are intended beneficiaries of the arbitration clause; and that all claims against them that arise out of or relate to this Agreement must be resolved with us through arbitration . . . .
>
> Any disputes concerning the enforceability or scope of the arbitration clause shall be resolved pursuant to the Federal Arbitration Act, 9 U.S.C. § <u>et seq.</u> ("FAA"), and the parties agree that the FAA preempts any state law restrictions (including the site of the arbitration) on the enforcement of the arbitration clause in this Agreement. . . . If, prior to the Arbitrator's final decision, either we or you commence an action in any court of a claim that arises out of or relates to this Agreement (except for the purpose of enforcing the arbitration clause or as otherwise permitted by this Agreement), that party will be responsible for the other party's expenses of enforcing the arbitration clause, including court costs, arbitration filing fees and other costs and attorney's fees.
>
> If a party [ ] commences action in any court, except to compel arbitration, or except as specifically permitted under this agreement, prior to an arbitrator's final decision . . . then that party is in default of this Agreement. . . . The defaulting party will be responsible for all expenses incurred by the other party, or the improperly named person or entities, including lawyers' fees.

<u>Id.</u> ¶ 10.

On August 12, 2015, a Wisconsin court granted a judgment of eviction to Subway Real Estate, LLC ("SRE") against Repins, in a case entitled <u>Subway Real Estate, LLC, v. Repins</u>, Case No. 15SC017457 ("the Wisconsin Lawsuit"). <u>See</u> Wisconsin Court Order (Doc. No. 1-3) at 2. SRE is DAI's leasing affiliate. <u>See</u> Pet. to Compel ¶ 10; Answer/Response ¶ 10.

Also on August 12, 2015, Repins, via counsel, filed a document in the Wisconsin Lawsuit, in which Repins asserted what he referred to as "affirmative defenses/claims." <u>See</u> Wisconsin Lawsuit Defenses/Claims Filing (Doc. No. 1-4). Repins "affirmatively state[d]" that DAI "is an indispensable party which must be joined in" the Wisconsin

3

Lawsuit. Wisconsin Defenses/Claims Filing ¶ 1. Repins also argued that SRE, by filing the Wisconsin Lawsuit, "has waived the arbitration provision of the agreements between" Repins, SRE, and DAI. Id. ¶ 5. On October 2, 2015, Repins, via counsel, emailed DAI that Repins "intends to join [DAI] into the [Wisconsin Lawsuit] likely as an involuntary plaintiff." See Email Exchange (Doc. No. 1-6) at 2.

In response, DAI filed its first lawsuit against Repins in this court ("the First Federal Lawsuit"), seeking to compel arbitration. See Doctor's Associates, Inc. v. Repins, Case No. 3:15-cv-1450 (JCH). In a Memorandum in Support of a Motion to Dismiss the First Federal Lawsuit (Case No. 15-cv-1450, Doc. No. 14-1), Repins stated that he "ha[d]n't decided whether to join [DAI] in [the Wisconsin Lawsuit]." Mem. in Supp. of Mot. to Dismiss First Federal Lawsuit at 2. Thereafter, DAI filed a Notice of Voluntary Dismissal (Case No. 15-cv-1450, Doc. No. 16) in the First Federal Lawsuit. DAI represents that it filed this Notice "[i]n light of, and in reliance on, Mr. Repins's representation[ ]" that he had not decided whether to join DAI in the Wisconsin Lawsuit." Notice of Voluntary Dismissal at 4.

On February 13, 2017, Repins filed a document entitled "Witness List and Itemization of Damages" (Doc. No. 1-7) in the Wisconsin Lawsuit. Repins lists witnesses who would testify as to topics involving both SRE and DAI. See Witness List and Itemization of Damages at 2. Under the section entitled "Itemization of Damages," Repins lists (1) "losses associated with the lost sale of [Repins's] business and restaurant equipment . . . . $60,000 plus interest," (2) Repins's, or Repins's company's, "lost future profits resulting from the forced closing of his business due to it being made unprofitable but for the leasing of adjacent Subway Restaurants by [SRE]. . . . $300–

450,000 plus interest," (3) "Loss of [Repins's or Repins's company's] investment improvements made to the leased space. $155,000, plus interest," (4) "Damages associated with [SRE's] infliction of emotional distress, including expense for counseling, out-of-pocket expenses for medication, collectively approx. $4,000, plus pain & suffering," and (5) costs and attorney's fees. Id. at 3.

On February 23, 2017, DAI brought the present lawsuit.

## III.    DISCUSSION

### A.    Subject Matter Jurisdiction

The court addresses Repins's argument that the court lacks diversity jurisdiction first, see Answer/Response ¶ 27, as this argument implicates the court's subject matter jurisdiction, see Pet. to Compel ¶ 4 (asserting diversity as sole basis for jurisdiction); see also Southland Corp. v. Keating, 465 U.S. 1, 16 n.9 (1984) ("[T]he Federal Arbitration Act . . . does not create any independent federal-question jurisdiction.").

This court has diversity jurisdiction in "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between[ ] citizens of different States." 28 U.S.C. § 1332(a)(1). As Repins admits, see Answer/Response ¶¶ 2–3, DAI "is a Florida corporation with a principal place of business in Connecticut," Pet. to Compel ¶ 2, and "Repins is a resident of Wisconsin," id. ¶ 3. The action is thus between citizens of different states. The question for the court is therefore whether the amount in controversy requirement is met.

"The amount in controversy in a petition to compel arbitration . . . is determined by the underlying cause of action that would be arbitrated." Karsner v. Lothian, 532 F.3d 876, 883 (D.C. Cir. 2008) (internal quotation marks and brackets omitted); Doctor's Assocs., Inc. v. Hamilton, 150 F.3d 157, 160 (2d Cir. 1998); Northwestern National Ins.

5

Co. v. Insco, Ltd., 866 F. Supp. 2d 214, 219 n.37 (S.D.N.Y. 2011). DAI seeks to compel Repins "to arbitrate the claims that he raised or could have raised against DAI or any of its affiliates, including [ ] SRE." Pet. to Compel Arbitration ¶ 25. The underlying cause of action that would be arbitrated if the court were to grant DAI's Petition to Compel Arbitration thus includes, at a minimum, all Repins's claims for damages in the Wisconsin Lawsuit. The amount of damages Repins seeks in the Wisconsin Lawsuit is far greater than $75,000. See Witness List and Itemization of Damages at 3 (seeking over $500,000 in total). The amount in controversy requirement is therefore met, and this court has diversity jurisdiction.

Repins argues that the amount in controversy requirement is not met because the amount of rent on which SRE claims Repins defaulted is less than $75,000. See Def.'s Mem. (in pages 6–13 of Doc. No. 17) at 9. This argument is unavailing. To the extent that SRE's claims against Repins may have a total value below $75,000, that fact would not disturb this court's determination that the amount-in-controversy here exceeds $75,000, because DAI seeks to compel arbitration of the claims asserted by Repins. Next, Repins speculates that his counterclaims in the Wisconsin Lawsuit "will likely be limited to less than $75,000" because Repins is "on the verge of filing bankruptcy." Id. at 9. The court does not see any connection between Repins's plans to file for bankruptcy and the amount of the claims Repins asserts in the Wisconsin Lawsuit. Finally, Repins asserts that, "even though I've made a damage claim which is greater, if you look at the facts, I'll probably not be able to prove much more than $50,000." Id. at 9. This is a concerning argument, suggesting that Repins either (1) was disingenuous with the Wisconsin state court when he asserted claims in excess of

$500,000 in the Wisconsin Lawsuit, or else (2) is being disingenuous with this court presently.  Moreover, Repins does not provide the court with "the facts" at which one must "look" to see that his claims are in fact worth little more than $50,000.  Id. at 9.  Repins's assertion, which he fails to support, that he will "probably not be able to prove much more than $50,000," id. at 9, is insufficient to disturb this court's conclusion that, based on Repins asserting claims in excess of $500,000 in the Wisconsin Lawsuit, see Witness List and Itemization of Damages at 3, the amount-in-controversy requirement is met.  The court concludes that diversity jurisdiction exists.

      B.          <u>Compelling Arbitration</u>

The FAA evinces a "strong federal policy favoring arbitration as an alternative means of dispute resolution."  E.g., <u>Benihana, Inc. v. Benihana of Tokyo, LLC</u>, 784 F.3d 887, 900 (2d Cir. 2015); <u>Chelsea Square Textiles, Inc. v. Bombay Dying and Manufacturing Co., Ltd.</u>, 189 F.3d 289, 294 (2d Cir. 1999)). The FAA provides that written arbitration provisions "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2; <u>see also</u> <u>AT&T Mobility LLC v. Concepcion</u>, 563 U.S. 333, 339 (2011).

The FAA "requires courts to enforce privately negotiated agreements to arbitrate . . . in accordance with their terms."  <u>Volt Info. Scis., Inc. v. Bd. of Tr. of Leland Stanford Junior Univ.</u>, 489 U.S. 468, 478 (1989).  Thus, a court must compel arbitration, <u>see</u> 9 U.S.C. § 4, where (1) the dispute is arbitrable, pursuant to a valid agreement to arbitrate, and (2) "one party to the agreement has failed, neglected or refused to arbitrate," <u>LAIF X SPRL v. Axtel, S.A. de C.V.</u>, 390 F.3d 194, 198 (2d Cir. 2004).

1. Arbitrability

The question of whether a dispute is arbitrable depends on "(1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." In re Am. Exp. Fin. Advisors Sec. Litig., 672 F.3d 113, 128 (2d Cir. 2011). In the absence of any agreement dictating otherwise, a court would typically decide these questions of arbitrability, because "the general presumption is that the issue of arbitrability should be resolved by the courts." Alliance Bernstein Inv. Research & Mgmt., Inc. v. Schaffran, 445 F.3d 121, 125 (2d Cir. 2006).

However, "the issue of arbitrability may [ ] be referred to the arbitrator if there is clear and unmistakable evidence from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator." Contec Corp. v. Remote Sol., Co., 398 F.3d 205, 208 (2d Cir. 2005) (internal quotation marks omitted); see also Alliance Bernstein, 445 F.3d at 125. As the Supreme Court has explained, a

> delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement. [The Supreme Court has] recognized that parties can agree to arbitrate gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy. . . . An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other. The additional agreement is valid under § 2 'save upon such grounds as exist at law or in equity for the revocation of any contract,' and federal courts can enforce the agreement by . . . compelling arbitration under § 4.

Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 68–70 (2010) (internal quotation

marks and citations omitted).

Here, the parties have agreed that arbitrability is an issue for the arbitrator, in a delegation provision. See Franchise Agreement No. 25752 ¶ 10(f). The delegation provision states that, "[a]ny disputes concerning the enforceability or scope of the arbitration clause shall be resolved pursuant to the [FAA], and the parties agree that the FAA preempts any state law restrictions (including the site of the arbitration) on the enforcement of the arbitration clause in this Agreement." Id. ¶ 10(f).

Repins contests the validity of the arbitration clause, arguing that the clause "is procedurally or substantively unconscionable," and that, if arbitration does occur, the arbitration should occur in Milwaukee, Wisconsin. Answer/Response ¶¶ 25–27. These arguments regard "gateway" or "threshold" issues of "arbitrability." Rent-A-Center, 561 U.S. 63, 68–70 (2010) (treating claim that arbitration provision is unconscionable as gateway issue effectively delegated to arbitrator by delegation clause). The court makes no ruling as to whether the arbitration clause is unconscionable, nor as to whether it was improper for the arbitration clause to select Bridgeport, Connecticut as the seat of arbitration, rather than Milwaukee, Wisconsin. See Answer/Response ¶ 27; Franchise Agreement No. 25752 ¶ 10(b). Rather, the court determines that "there is <u>clear and unmistakable evidence</u> from the arbitration agreement . . . that the parties intended that the question of arbitrability shall be decided by the arbitrator." Contec, 398 F.3d at 208; see also Franchise Agreement No. 25752 ¶ 10(f). Confronted with delegation provisions identical to that here, this court has previously found "clear and unmistakable evidence that the [ ] franchise agreement's Arbitration Clause delegates the question of arbitrability to the arbitrator." Doctor's Assocs., Inc. v. Pahwa ("Pahwa"),

No. 3:16-CV-446 (JCH), 2016 WL 7635748, at *19 (D. Conn. Nov. 3, 2016), report and recommendation adopted 2016 WL 7410782 (D. Conn. Dec. 2, 2016); Doctor's Assocs., Inc. v. Tripathi ("Tripathi"), No. 3:16-CV-562 (JCH), 2016 WL 7634464, at *17 (D. Conn. Nov. 3, 2016), report and recommendation adopted, 2016 WL 7406725 (D. Conn. Dec. 2, 2016). The court finds that the parties have effectively delegated the question of arbitrability—including "whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy"—to the arbitrator. Rent-A-Center, 561 U.S. at 68–69. It is thus proper for the court to compel arbitration if Repins has refused to arbitrate. See 9 U.S.C. § 4; LAIF, 390 F.3d at 198. Repins's arguments as to the validity or scope of the arbitration clause are properly addressed to the arbitrator.

Repins also argues that DAI's "actions directed against" Repins "are unconscionable." Answer/Response ¶ 27. The court is unaware of any authority, however, by which the allegation that a party has engaged in "unconscionable" conduct is a basis upon which to void an arbitration agreement.

2. Refusal to Arbitrate

Repins has "failed, neglected or refused to arbitrate," LAIF, 390 F.3d at 198, by asserting claims for damages against SRE which arise out of the Franchise Agreements.

According to Repins's Itemization of Damages in the Wisconsin Lawsuit, Repins asserts claims against SRE and seeks damages from SRE. See Witness List and Itemization of Damages at 2. While the Itemization of Damages does not make clear whether Repins currently asserts any claims against DAI, the parties agree that SRE is DAI's leasing affiliate. See Pet. to Compel ¶ 10; Answer/Response ¶ 10. Repins has

10

"agree[d]" "that all claims against" DAI's "[a]ffiliates" "that arise out of or relate to" the Franchise Agreements "must be resolved with [DAI] through arbitration." Franchise Agreement No. 25752 ¶ 10(d). Thus, from the face of the franchise agreements, Repins appears to have agreed to arbitrate the claims he asserts in the Wisconsin Lawsuit.

Repins argues that he does "not presently have any pending dispute in litigation with [DAI] requiring this court's involvement," Answer/Response ¶ 27, because DAI "is not currently a Named Party in the pending [Wisconsin Lawsuit]." Def.'s. Mem. (in pages 6–13 of Doc. No. 17) at 7. Nonetheless, as discussed above, Repins's claims against SRE facially appear to fall under the arbitration clause. That said, it is for the arbitrator to decide whether the arbitration provision is properly interpreted to include or exclude Repins's claims against SRE. See Agreement No. 25752 ¶ 10(f) ("Any disputes concerning the [ ] scope of the arbitration clause shall be resolved pursuant to the Federal Arbitration Act.").

It is true that, "[a]ny action brought by the Sublessor to enforce the Sublease," such as the claim brought by SRE in the Wisconsin Lawsuit, "is not to be construed as an arbitrable dispute." Id. ¶ 10(c). However, Repins asserts counterclaims in the Wisconsin Lawsuit, such as intentional infliction of emotional distress, and seeks damages. See Witness List and Itemization of Damages at 3. These counterclaims for damages would not appear to fall under the category of an "action brought by the Sublessor to enforce the Sublease," in the meaning of the Franchise Agreements. Franchise Agreement No. 25752 ¶ 10(c). Repins's claims asserted in the Wisconsin Lawsuit—whether against SRE or DAI—thus are at least facially covered by the

11

arbitration provision. However, it is ultimately for an arbitrator to decide the application of the "action brought by the Sublessor" provision. Id. ¶ 10(c).

Because the parties have formed what, on its face, appears to be an agreement to arbitrate claims such as the claims Repins asserted in the Wisconsin Lawsuit, because an arbitrator must decide whether the parties in fact formed a valid arbitration agreement covering Repins's claims, and because Repins has failed to arbitrate his claims, it is proper for the court to compel arbitration. See 9 U.S.C. § 4.

### 3. Waiver, Laches, Good Faith

Repins argues that DAI "or its affiliates have waived any right to complain about litigating [the] dispute in Milwaukee County Circuit Court," Answer/Response ¶ 25, by voluntarily dismissing the First Federal Lawsuit, see Def.'s Mem. at 12, and that the present suit "should be barred by the doctrine of laches," Answer/Response ¶ 25. These arguments are properly addressed to the arbitrator, and not to the court.

"[P]rocedural questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator, to decide. So, too, the presumption is that the arbitrator should decide allegations of waiver, delay, or a like defense to arbitrability." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84, (2002) (internal quotation marks, brackets, and citation omitted); see also Doctor's Assocs., Inc. v. Distajo, 66 F.3d 438, 454 (2d Cir. 1995) ("[T]he defense of waiver is generally referable to the arbitrators."). Such procedural defenses to arbitrability include the doctrine of "laches." Howsam, 537 U.S. at 85 (internal quotation marks omitted); see also Trafalgar Shipping Co. v. Int'l Mill. Co., 401 F.2d 568, 571 (2d Cir. 1968) ("[A]ll questions of delay which relate to issues which the parties have agreed to submit to

arbitration . . . [must] be resolved by the arbitrators, not the court."). The court therefore will not address Repins's arguments regarding waiver and laches, because these are arguments for the arbitrator.

Repins also argues that DAI's "actions directed against [Repins] are a breach of [DAI's] duty of good faith and fair dealings." Answer/Response ¶ 25. Again, this is an argument for the arbitrator to consider. See Subway Int'l B.V. v. Seistola, No. 3:13-CV-1610 (JCH), 2014 WL 9861978, at *2 (D. Conn. Apr. 7, 2014) ("To the extent that the counterclaims [including breach of the implied covenant of good faith and fair dealing] concern the Franchise Agreement, they could have been brought before the arbitrator."). The court therefore will not decide whether DAI breached a duty of good faith and fair dealings.

Because the Franchise Agreements, on their face, represent an agreement to arbitrate claims such as those Repins is pursuing in the Wisconsin Lawsuit, and because the parties have effectively delegated gateway issues of arbitrability to the arbitrator, DAI's Petition to Compel Arbitration is granted to the extent that it seeks to compel arbitration.

C. Fees and Costs

DAI also asks this court to direct Repins to "pay all of DAI's and its affiliates' expenses, including costs and attorneys' fees, incurred in connection with compelling arbitration, including all costs and attorneys' fees relating to this Petition [to Compel Arbitration] and the [First Federal Lawsuit], and in connection with the Wisconsin Litigation." Pet. to Compel ¶ 25.

The Franchise Agreements state that,

13

> If, prior to the Arbitrator's final decision, either we or you commence an action in any court of a claim that arises out of or relates to this Agreement (except for the purpose of enforcing the arbitration clause or as otherwise permitted by this Agreement), that party will be responsible for the other party's expenses of enforcing the arbitration clause, including court costs, arbitration filing fees and other costs and attorney's fees.
>
> If a party [ ] commences action in any court, except to compel arbitration, or except as specifically permitted under this agreement, prior to an arbitrator's final decision . . . then that party is in default of this Agreement. . . . The defaulting party will be responsible for all expenses incurred by the other party, or the improperly named person or entities, including lawyers' fees.

Franchise Agreement No. 25752 ¶ 10(f–g). Thus, based on the face of the Franchise Agreements, Repins appears to have agreed to pay the attorney's fees and costs associated with the Wisconsin Lawsuit, the First Federal Lawsuit, and the present lawsuit.

Repins, who is pro se, does not specifically address DAI's argument as to fees and costs. See Answer/Response ¶ 25. However, DAI does not cite any authority for the proposition that a court may award attorney's fees and costs in a case such as that at bar. See Pl.'s Mem. (Doc. No. 1-9) at 9 (simply asserting that Repins is responsible for paying these expenses). As discussed above, this court compels arbitration pursuant to the Franchise Agreements' delegation provision, thereby allowing an arbitrator to decide whether the contract's arbitration clause is valid and applicable. It is not for this court to decide whether the contract's arbitration clause is valid and applicable. See Franchise Agreement No. 25752 ¶ 10(f) ("Any disputes concerning the enforceability or scope of the arbitration clause shall be resolved pursuant to the Federal Arbitration Act."); see also Contec, 398 F.3d at 208 ("[T]he issue of arbitrability

14

may [ ] be referred to the arbitrator if there is <u>clear and unmistakable evidence</u> from the arbitration agreement . . . that the parties intended that the question of arbitrability shall be decided by the arbitrator."). If the contract's arbitration clause is determined to be unenforceable, or inapplicable to the claims that Repins has refused to arbitrate, Repins will not be required to pay expenses. Therefore, until that initial question is decided by the arbitrator, this court has no basis upon which to order Repins to pay attorney's fees or costs.

DAI's Petition to Compel Arbitration is denied to the extent that it seeks attorney's fees and costs.

### D. Permanent Injunction

DAI asks this court to "enter an injunction restraining Mr. Repins and any other persons or entities who are in active concert or participation with him from prosecuting any claims against DAI or its affiliates, including [SRE], that were, are, or could have been asserted in" the Wisconsin Lawsuit. Mot. for Permanent Injunction (Doc. No. 3). Repins opposes the Motion. <u>See</u> Answer/Response ¶ 26. For the reasons set forth below, the court will not grant an injunction at this time.

The Supreme Court has reiterated that,

> [a]ccording to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

<u>eBay Inc. v. MercExchange, L.L.C.</u>, 547 U.S. 388, 391 (2006). Additionally, under the

Anti-Injunction Act, "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.

DAI makes no attempt to demonstrate that the four <u>eBay</u> factors are met, instead arguing only that this case constitutes an exception to the Anti-Injunction Act. <u>See</u> Pl.'s Mem. at 8–9; <u>see also</u> Mot. for Permanent Injunction (lacking any separate memorandum in support). With respect to the third and fourth factors, the court finds that DAI has failed to meet its burden of proving by a preponderance of the evidence "that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted," and "that the public interest would not be disserved by a permanent injunction." <u>eBay</u>, 547 U.S. at 391. At this stage, an arbitrator has not yet addressed the enforceability or applicability of the arbitration clause. For this court to permanently enjoin Repins from pursuing his claims in state court would thus be premature.

DAI cites cases such as <u>Emilio v. Sprint Spectrum, L.P.</u>, 315 F. App'x 322 (2d Cir. 2009); <u>Pahwa</u>, 2016 WL 7635748; <u>Tripathi</u>, 2016 WL 7634464; and <u>Doctor's Assocs., Inc. v. Distajo</u>, 944 F. Supp. 1010 (D. Conn. 1996) (Dorsey, J.), <u>aff'd</u>, 107 F.3d 126 (2d Cir. 1997), in support of its argument that an injunction is necessary for this court to protect or effectuate its judgments, and therefore that an exception to the Anti-Injunction Act applies. <u>See</u> Pl.'s Mem. at 8–9. These cases do not persuade the court that a permanent injunction is appropriate at this stage, based on the facts of this case. In <u>Emilio</u>, the Second Circuit held that an injunction was proper because a party sought

16

a state court injunction forcing the other party to dismiss his federal arbitration claims. See 315 F. App'x at 325. DAI has provided no evidence that Repins seeks to force DAI to dismiss its claims here. In Pahwa and Tripathi, this court adopted recommended rulings granting injunctions where defendants had asked the state court for an order declaring that DAI would "'never be entitled to a stay of [the state court] matter under [ ] the Federal Arbitration Act and that [the parties'] arbitration clause [was] unconscionable and unenforceable.'" Pahwa, 2016 WL 7635748, at *22; Tripathi, 2016 WL 7634464, at *20. While Repins argues in the Wisconsin Lawsuit that SRE "has waived the arbitration provision of the" Franchise Agreements, Wisconsin Defenses/Claims Filing ¶ 5, DAI has pointed to no evidence that Repins seeks a declaration that DAI would never be entitled to a stay of the Wisconsin Lawsuit. In the Distajo litigation, a court in this District ruled that existing preliminary injunctions would remain in effect because they were "necessary to effectuate the foregoing judgment compelling arbitration." 944 F. Supp. at 1023. These preliminary injunctions had been entered because the defendants there had "clearly manifested their intent to proceed with state court litigation despite the order of arbitration of their disputes with DAI." Doctor's Assocs., Inc. v. Distajo, 870 F. Supp. 34, 36 (D. Conn. 1994), aff'd in part, rev'd in part, 66 F.3d 438 (2d Cir. 1995). DAI has not shown that Repins intends to disobey the order that this court will issue.

Because DAI has failed to demonstrate "that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted," and "that the public interest would not be disserved by a permanent injunction," eBay, 547 U.S. at 391, the Motion for Permanent Injunction is denied.

17

## IV. CONCLUSION

For the reasons set forth herein, the Petition to Compel Arbitration (Doc. No. 1) is **GRANTED IN PART AND DENIED IN PART** and the Motion for Permanent Injunction is **DENIED**. Repins is ordered to arbitrate the claims that he raised or could have raised against DAI or any of its affiliates, including but not limited to SRE, in an arbitration against DAI in the manner provided by the Franchise Agreement. The case is closed.

**SO ORDERED.**

Dated at New Haven, Connecticut this 4th day of May, 2017.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge